UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD MANHART, and
DEBORAH MANHART, his wife,                                     REPORT
                                                                and
                                       Plaintiffs,          RECOMMENDATION

                    v.
                                                            09-CV-00875W(F)
MORTON INTERNATIONAL, INC.,

                                       Defendant.
_____

MORTON INTERNATIONAL, INC.,

                                Third-Party Plaintiff,
                    v.

SECURITAS SECURITY SERVICES USA, INC.,

                                Third-Party Defendant.
_____

APPEARANCES:            THOMAS C. PARES, ESQ.
                        Attorney for Plaintiffs
                        455 Cayuga Road
                        Suite 600
                        Buffalo, New York  14225

                        PERSONIUS MELBER LLP
                        Attorneys for Defendant and Third-Party Plaintiff
                        BRIAN MELBER and
                        SCOTT R. HAPEMAN, of Counsel
                        2100 Main Place Tower
                        350 Main Street
                        Buffalo, New York 14202

                        GOLDBERG SEGALLA LLP
                        Attorneys for Third-Party Defendant
                        ALBERT J. D'AQUINO,
                        BRIAN R. BIGGIE, of Counsel
                        665 Main Street
                        Suite 400
                        Buffalo, New York  14203

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara, on October 21, 2009, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on motions for summary judgment filed by Third-Party Defendant on July 31, 2014 (Doc. No. 51), and by Defendant on August 29, 2014 (Doc. No. 57).

## BACKGROUND

On August 31, 2009, Plaintiffs Edward Manhart ("Plaintiff" or "Manhart") and his wife, Debra Manhart[1] ("Debra Manhart") (together, "Plaintiffs"), filed this personal injury action in New York Supreme Court, Erie County, against Defendant Morton International, Inc. ("Morton" or "Defendant"), an Indiana corporation, alleging Manhart was injured when he fell from stairs leading to a security guard station at Morton's salt plant in Silver Springs, New York.  On October 9, 2009, Morton removed the action asserting diversity jurisdiction in this court pursuant to 28 U.S.C. § 1332.  On April 16, 2012, Plaintiffs filed the Amended Complaint (Doc. No. 12), asserting two claims for relief.  Plaintiffs' First Claim for Relief alleges Manhart sustained his injuries as a result of Morton's negligence ("negligence claim") when Morton failed to remove snow and ice from the stairs, resulting in Plaintiff's slipping and falling off the stairs, Amended Complaint ¶¶ 5, 8, or, alternatively, when Morton constructed the stairs without a landing platform at the top of the stairs causing Plaintiff to miss the top stair and fall to the pavement.  *Id.* ¶¶ 6, 8.  Plaintiffs' Second Claim for Relief is a derivative claim

---

[1] The court notes the first name of Plaintiff's "Debra Manhart" is incorrectly spelled in the removal petition as "Deborah."

("derivative claim") for loss of Plaintiff's work, services, labor, consortium, and society asserted by Plaintiff's wife, Debra Manhart. *Id.* ¶¶ 10-11.   Morton's answer to the Amended Complaint was filed on July 23, 2010 (Doc. No. 14) ("Answer").   With leave of the court, Morton filed on April 26, 2011, the Third-Party Complaint (Doc. No. 18), against Third-Party Defendant Securitas Security Services USA, Inc. ("Securitas" or "Third-Party Defendant"), for common law indemnification and contribution, Third-Party Complaint ¶¶ 11-13 ("common law indemnification and contribution claim"); contractual indemnification, *id.* ¶¶ 14-20 ("contractual indemnification claim"), and breach of contract for failure to procure insurance.   *Id.* ¶¶ 21-24 ("breach of contract claim"). Securitas filed an answer to the Third-Party Complaint on December 22, 2011 (Doc. No. 22) ("Answer to Third-Party Complaint").

On July 31, 2014, Securitas filed a motion for summary judgment (Doc. No. 51) ("Securitas's Motion"), seeking dismissal of the Amended Complaint's claim for damages based on Manhart's fall, and the entire Third-Party Complaint.   Also filed on July 31, 2014, were the Statement of Material Facts in Support of Third-Party Defendant's Motion for Summary Judgment (Doc. No. 52) ("Securitas's Statement of Facts"), attaching exhibits A through T (Docs. Nos. 52-1 through 52-20) ("Securitas's Exh(s). __"), the Memorandum in Support of Third-Party Defendant's Motion for Summary Judgment (Doc. No. 53) ("Securitas's Memorandum"), and the Affidavit of Brian R. Biggie, Esq. (Doc. No. 54) ("Biggie Affidavit").

On August 29, 2014, Morton filed a motion for summary judgment (Doc. No. 57) ("Morton's Motion"), seeking enforcement of an indemnification provision of the written agreement between Morton and Securitas in the event Plaintiffs should ultimately

prevail in this action, attaching in support the Declaration of Counsel Scott R. Hapeman, Esq., and exhibits A through F (Doc. No. 57-1), and G through K (Doc. No. 57-2) ("Morton's Exh(s). __").  Also filed on August 29, 2014, were a Memorandum of Law (Doc. No. 58) ("Morton's Memorandum"), and a Statement of Facts (Doc. No. 59) ("Morton's Statement of Facts").

On October 3, 2014, Morton filed in opposition to Securitas's Motion the Affidavit of Brian R. Biggie, Esq. (Doc. No. 67) ("Biggie Response Affidavit"), attaching exhibits A through D (Docs. Nos. 67-1 through 67-4) ("Morton Response Exh(s). __").  On October 17, 2014, Morton filed Morton International Inc.'s Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment (Doc. No. 68) ("Morton's Reply").

On November 3, 2014, Plaintiffs filed the Statement of Material Facts in Support of the Plaintiffs' Opposition to the [Third-Party Defendants'][2] Motion for Summary Judgment (Doc. No. 69) ("Plaintiffs' Statement of Facts"), attaching exhibits 1 through 8 (Docs. No. 69-1 through 69-8) ("Plaintiffs' Exh(s). __"), the Affidavit of Thomas C. Pares, Esq. (Doc. No. 69-9) ("Pares Affidavit"), and the Memorandum in Opposition to Third-Party Defendant, Securitas Security Services USA, Inc. Motion for Summary Judgment (Doc. No. 70) ("Plaintiff's Response").  Also on November 3, 2014, Morton filed in opposition to Securitas's Motion the Memorandum of Law (Doc. No. 71) ("Morton's Response"), the Declaration of Scott R. Hapeman, Esq. (Doc. No. 72) ("Hapeman Declaration"), attaching exhibits A through E (Docs. Nos. 71-2), and F through K (Doc. No. 2) ("Morton's Response Exh(s). __"), and the Statement of Facts Controverting Securitas Security Services USA, Inc., Statement of Facts (Doc. No. 73) ("Morton's Response Statement of Facts").

---

[2] Unless otherwise indicated, all bracketed material is added.

On December 5, 2014, Securitas filed the Reply Memorandum of Law in Support of Securitas' Motion for Summary Judgment (Doc. No. 78) ("Securitas's Reply").  Oral argument was deemed unnecessary.

Based on the following, Securitas's Motion should be GRANTED in part and DENIED in part; Morton's Motion should be GRANTED in part and DENIED in part.

## FACTS[3]

Defendant and Third-Party Plaintiff Morton International, Inc. ("Morton"), an Indiana corporation, owns the Morton Salt Plant ("the salt plant"), located in Silver Springs, New York.  In 2003, Morton engaged Third-Party Defendant Securitas Security Services USA, Inc. ("Securitas"), to provide security services at the salt plant.  The relationship between Morton and Securitas is governed by several documents including the Security Guard Services Agreement ("the Agreement"),[4] between Securitas and Morton's parent company, Rohm and Haas Company, originally effective from November 1, 2003 through October 31, 2006, and an Amendment to the Security Guard Services Agreement ("the Amendment").[5]  The Agreement and the Amendment were continued through several subsequent periods by the Morton Salt Service Contract or Purchase Order ("purchase orders"), including, as relevant, a purchase order effective December 1, 2008 through Nov. 30, 2010 ("Purchase Order").[6]  The Agreement and any Purchase Orders are to be "governed and interpreted in accordance with the laws of PENNSYLVANIA."  Agreement ¶ 19.1 (Governing Law) (capitalization in original).

The Agreement provides that

---

[3] Taken from the pleadings and motion papers filed in this action.
[4] Securitas's Exh. S; Morton's Exh.  I.
[5] Securitas's Exh. T; Morton's Exh. I.
[6] Securitas's Exh. U; Morton's Exh. I.

> In the event of a conflict between the preprinted terms on a Purchase Order and the terms elsewhere in this Agreement, the terms elsewhere in this Agreement shall govern.  In the event of a conflict between any terms on a Purchase Order which are not preprinted and those elsewhere in this Agreement, the terms of the Purchase Order which are not preprinted shall govern.

Agreement ¶ 4.1.

Although the Agreement contains an insurance clause, requiring Securitas to maintain,

*inter alia*, comprehensive general liability insurance, Agreement ¶ 10.1 (Insurance), no

additional insured provision is included in the Agreement.  The Agreement also contains

a broad indemnification clause requiring

> To the fullest extent permitted by law, Seller [Securitas] shall indemnify, hold harmless, and defend Buyer [Morton] . . . from and against all claims, damages, losses, and expenses, . . . arising out of or resulting from the performance of services hereunder, provided that any such claim, damage, loss, or expense is caused in whole or in part by the negligence of Seller or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, regardless of whether it is caused in part by a party indemnified hereunder.  In any and all claims against Buyer or [ ] any of its officers, directors, agents or employees, by any employee of Seller or anyone directly or indirectly employed by Seller, or anyone for whose acts Seller may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Seller under Workers' Compensation acts, Disability Benefit acts or other employee benefit acts.

Agreement ¶ 10.2 (Indemnification).

The Amendment is incorporated into the Agreement and states that "in case of

any difference" between the Agreement and the Amendment, the Amendment controls.

Amendment at 1.  The Amendment's insurance coverage clause provides that

> Any insurance coverage (additional insured or otherwise) Company [Securitas] provides for Client [Morton] or others will only cover liability assumed by Company in this Amendment; such insurance coverage will not cover the results of Client's or the other's own acts or omissions.

Amendment ¶ 5.

The Amendment also contains an indemnification clause providing

> Company [Securitas] will defend (and control any such defense) and indemnify Client [Morton] (and any other person or entity required to be defended or indemnified under the Agreement) against any claim, loss, damage or expense in connection with the Agreement, but only to the extent the claim, loss, damage or expense is caused by the negligence, willful misconduct, or other fault (including, but not limited to, breach of contract) of Company, its employees or agents.

Amendment ¶ 1.

The Amendment further provides that

> Company [Securitas] has no obligation to perform any duties or services (and will bear no responsibility for duties and services) other than those expressly specified in the Agreement.  Company in not engaged as a security consultant and has no overall responsibility for client's security.

Amendment ¶ 8.

The preprinted insurance clause in the Purchase Order through which the Agreement and Amendment were continued at all times relevant to this action provides that, *inter alia*, Securitas "shall obtain and maintain at its own expense . . . COMPREHENSIVE GENERAL LIABILITY with a minimum combined single limit of liability of $ 2,000,000 per occurrence, . . . ."  Purchase Order ¶ 5(a).  Further, the Purchase Order, unlike the Agreement and the Amendment, contains an additional insured provision stating "[a]ll required insurance shall be endorsed to include Morton International, Inc., . . . ; shall provide that Morton International, Inc., . . . shall not be stopped from recovery against Provider [Securitas] under the policy due to being covered as an Additional Insured. . . ."  *Id.* ¶ 5(c).  The Purchase Order also includes a broader, preprinted indemnification provision requiring, as relevant here, Securitas to indemnify, defend, and hold harmless Morton

> from and against any and all liability, claim, loss, damage, action, suit, cost or expense (including attorney fees) for injuries or death to persons or property,

including but not limited to employees and property of Morton and Provider [Securitas], resulting from, arising out of, or in any way related to, directly or indirectly: (i) any act or omission of Provider or any of its agents (including the agents, officers or employees of either of them), in connection with this Contract, regardless of fault; (ii) Provider's performance or failure to perform (or that of any of its agents) under this Contract; . . . (iv) any breach of warranty, breach of contract, misrepresentation or false certification, or failure to exercise due care by Provider, agents or suppliers, regardless of any active or passive negligence by Morton, except if the liability, claim, loss, damage, action, suit, cost or expense is a result of the willful misconduct or sole negligence of Morton. Provider and Morton intend that if Provider fails to fulfill any term, condition or obligation of this Contract and that failure in any way causes any part of a claim, loss, damage, action, suit, cost or expense to or against Morton, its agents, employees or representatives, or if the fulfillment of the term, condition, or obligation would have prevented or in any way minimized the loss, Provider agrees to indemnify, defend and hold harmless Morton, its agents, employees or representatives, regardless of whether any other party is at fault contributing to the claim, loss damage, etc., including Morton.  All indemnifications shall be continuing and shall survive termination of this Contract.  Provider shall be jointly and severally liable with its agents or suppliers for any acts, failures to act, omissions or breaches of or by any of its agents or suppliers.  Morton may, at its option, be represented by and actively participate through its own counsel in any suit or action against the foregoing persons and entities.

Purchase Order ¶ 4 (Indemnification).

Plaintiff Edward Manhart ("Plaintiff" or "Manhart"), at all times relevant to this action, was employed as a truck driver for Land Air Express ("Land Air").  As a truck driver for Land Air, Plaintiff occasionally made pick-ups at, and deliveries to Morton's salt plant where Plaintiff was required to check in at a guard house ("the guard house"), sign in, obtain a pick-up number, and then proceed to the loading dock for the pick-up.  The guard house is a small, four-sided structure located on the Morton premises.  Entry to the guard house was by stairs ("the stairs") on the structure's south side leading to a door that swung out.[7]  The stairs had recently been replaced by Morton after Securitas

---

[7] Although Plaintiff alleges, Amended Complaint ¶ 8, that the new stairs, constructed by Morton, were in violation of New York State Building Code because the stairs did not have a handrail or a landing despite the fact that the door at the top of the stairs swung out, and lacked uniform risers, whether the stairs did not comply with the building code is not before the court on the instant motions.

Captain Frank West ("West"), complained that the previous stairs, consisting of a single concrete step, was dangerous, and West observed a driver twist his ankle while attempting to descend the step, causing the driver to stumble and almost fall off the step. The guard house had another exit on the north side.

On December 10, 2008, Plaintiff arrived at Morton for a pick-up and proceeded up the guard house stairs. Precipitation had been falling and Plaintiff noticed snow and ice on the left side of the stairs, ice in the middle, but no snow or ice on the right side of the stairs. Upon entering the guard house at 4:20 P.M., Plaintiff spoke with West for nine or ten minutes. West then exited the guard house through the north door to attend to another vehicle, and Plaintiff, attempting to exit the guard house through the same south-side door through which he had entered the guard house, opened the door, stepped out, and fell to the ground, fracturing his left femur ("the fall" or "the incident"). Plaintiff attributes the fall to slipping on ice on the stairs which Morton failed to remove, or to the absence of a landing platform at the top of the stairs that caused Plaintiff to miss the stairs and fall to the pavement, Amended Complaint ¶¶ 5-6, 8, whereas Morton and Securitas assert Plaintiff's own carelessness and haste caused him to miss the first step of the stairs and fall.

West heard someone calling his name and walked around the guard house where West discovered Plaintiff lying on the ground complaining of pain in his left hip. West completed an accident report regarding the incident stating Plaintiff "said when he walked out of the guard house he forgot about the step and missed the step." Securitas Incident Report.[8] West also reported the incident occurred at 4:29 P.M. The Securitas Incident Report does not mention any ice or snow contributed to Plaintiff's fall. Six

---

[8] Securitas's Exh. O.

weeks prior to the incident, the guard house stairs from which Plaintiff fell had been replaced by Morton who had also constructed the guard house.

Another incident report was prepared by Morton employee Bruce Caldwell ("Caldwell"), a second shift supervisor at the time of the incident, who arrived at the scene to investigate while Manhart was still on the ground and before the ambulance arrived.  Morton Incident Report.[9]  According to the Morton Incident Report, Plaintiff "fell off stairs leaving guard shack."  Morton Incident Report at 1.  Caldwell checked lines on the Morton Incident Report form indicating the cause of the incident was "lack of awareness, inattention" and "unsafe speed, haste."  *Id*. at 2.  No other cause is indicated nor is the line for "weather" as a cause checked.  *Id*.

The parties dispute whether Morton or Securitas was responsible for keeping the guard house stairs clear of snow and ice.  West maintains he would voluntarily clear the stairs as a courtesy.  West also drafted a memo or post order ("the post order"), directing Securitas employees to keep the guard house, including the stairs, free of snow and ice, although he is unable to recall whether the post order was drafted prior to the incident, and is unsure whether he had authority to impose the obligation on Securitas employees at the salt plant.

Although Plaintiff returned to work as a truck driver for Land Air Express, he eventually resigned when the lingering physical effects of the incident rendered Plaintiff unable to perform his former truck driving job.

---

[9] Securitas's Exh. N.

**DISCUSSION**

**1.      Summary Judgment**

Securitas moves for summary judgment on Plaintiffs' negligence claim insofar as it is premised on the presence of ice and snow on the stairs, as well as on three of Morton's third-party claims.  Morton moves for summary judgment on the contractual indemnification claim.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).   "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

**2.      Negligence, Indemnification, and Contribution Claims**

Plaintiffs' First Claim for Relief alleges Manhart sustained his injuries as a result of Morton's negligence ("negligence claim") when Morton failed to remove snow and ice from the stairs, resulting in Plaintiff's slipping and falling off the stairs, Amended Complaint ¶¶ 5, 8, or, alternatively, when Morton constructed the stairs without a landing platform at the top of the stairs causing Plaintiff to miss the top stair and fall to the pavement. *Id.* ¶¶ 6, 8.  Morton asserts cross-claims against Securitas for common

law indemnification and contribution, Third-Party Complaint ¶¶ 11-13, and for contractual indemnification, Third-Party Complaint ¶¶ 14-20.  Securitas moves for summary judgment on Plaintiffs' negligence claim only insofar as it is premised on the alleged presence of ice and snow on the stairs causing or contributing to Plaintiff's fall, as well as on Morton's contractual indemnification claim, and common law indemnification and contribution claims.  Securitas's Memorandum at 3-8.  Morton seeks summary judgment only on Morton's Second Cross-Claim against Securitas seeking contractual indemnification.

In support of summary judgment on the negligence claim, Securitas argues that the record is devoid of any evidence that Morton or Securitas created the allegedly icy condition on the stairs or had actual notice of the presence of such slipping hazard, requiring dismissal of the claim under New York law, or of any evidence that snow or ice was even present on the stairs at the time of Plaintiff's accident other than Plaintiff's own self-serving statement which is insufficient to avoid summary judgment.  *Id.*   In opposition to summary judgment, Plaintiffs point to deposition statements by Plaintiffs that the weather on the date of the accident was rainy, cold, snowy and icy, Plaintiff's Response at 7-8, relying on certified meteorological records in support.  *Id.* at 8-9 and Plaintiff's Exhs. 5 and 8.  Morton argues in opposition to Securitas's Motion there exists a material issue of fact as to whether Securitas created or had notice of the icy condition of the stairs.  Morton's Response at 4-6.  In further support of summary judgment on the negligence claim, Securitas argues that the meteorological data on which Plaintiffs rely is merely conclusory and speculative and also fails to support the conclusion that ice formed on the stairs and was present for a sufficient period of time such that Securitas

13

should have discovered the ice prior to Manhart's fall.  *Id.* at 6-8.  Securitas further

maintains that Morton has failed to present any evidence that Securitas created or had

actual or constructive notice about any ice hazard on the stairs.  *Id.* at 8-10.


### A.    Duty of Care

"Because a finding of negligence must be based on the breach of a duty, a

threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to

the injured party."  *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y.

2002) (citing *Darby v. Compagnie Natl. Air France*, 753 N.E.2d 160, 162 (N.Y. 2001);

and *Pulka v. Edelman*, 358 N.E.2d 1019, 1020 (N.Y. 1976)).[10]  "Without a duty running

directly to the injured person there can be no liability in damages, however careless the

conduct or foreseeable the harm."  *Lauer v. City of New York*, 733 N.E.2d 184, 187

(N.Y. 2000) (citing *Pulka*, 358 N.E.2d at 1020).  As such, "before a defendant may be

held liable for negligence it must be shown that the defendant owes a duty to the

plaintiff."  *Pulka*, 358 N.E.2d at 1020 (citing *Kimbar v. Estis*, 135 N.E.2d 798, 710 (N.Y.

1956)).

Here, the parties agree that neither the Agreement, the Amendment, nor the

Purchase Order specifies who is responsible for snow and ice removal at the salt plant

which is owned by Morton.  Generally, "[a] landowner must act as a reasonable [person]

in maintaining his property in a reasonably safe condition in view of all the

circumstances, including the likelihood of injury to others, the seriousness of the injury,

and the burden of avoiding the risk."  *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976)

---

[10] The parties do not dispute that New York law applies to Plaintiff's negligence claim and Morton's cross-claim for indemnification and contribution.

(internal quotation marks and citation omitted).  *See Galindo v. Town of Clarkson*, 814 N.E.2d 419, 421 (N.Y. 2004) ("It is well settled that a landowner has a duty to exercise reasonable care in maintaining his property in a reasonably safe condition under the circumstances.").  "The nature and scope of that duty and the persons to whom it is owed require consideration of the likelihood of injury to another from a dangerous condition on the property, the seriousness of the potential injury, the burden of avoiding the risk and the foreseeability of a potential plaintiff's presence on the property." *Galindo*, 814 N.E.2d at 421.  Further, although an out-of-possession landowner who does not retain control over the premises generally owes no duty to third-party occupants for injuries sustained on the premises, *Juarez v. Wavecrest Mgt. Team*, 672 N.E.2d 135, (N.Y. 1996) ("Generally, a landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises in repair and reserves the right to enter for inspection and repair."), in the instant case there is no evidence establishing that Securitas was a tenant of Morton or that Morton relinquished all control over the subject premises.  Nevertheless, there is evidence in the record upon which a reasonable jury could determine that Securitas had assumed the duty of clearing the stairs of snow and ice, such that Securitas was negligent in failing to clear the stairs of the snow and ice Manhart alleges was present on the stairs on December 10, 2008, causing Manhart to slip and sustain injury.

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."  *H.R. Moch Co., v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928) (citing cases).  In the

instant case, Plaintiff's claim against Securitas, who is not the owner of the premises in question, is "within the orbit" of this principle if the evidence establishes Securitas assumed the duty of clearing the stairs of snow and ice. *Id.* "The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all." *Id.* "[A]ssumed duties arise only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking." *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998). *See Heard v. City of New York*, 623 N.E.2d 541, 544 (N.Y. 1993) ("an 'assumed duty' or 'duty to go forward', may arise once a person undertakes a certain course of conduct upon which another relies" (citing *Nallan v. Helmsley-Spear, Inc.*, 407 N.E.2d 451 (N.Y. 1980))).

The evidence in the record before the court indicating Securitas assumed the duty of clearing snow and ice from the stairs includes the deposition testimony of Securitas employees Lou Ann Sprague, a security guard[11] ("Sprague"), Andrew Marshall, also a security guard ("Marshall"), and West who also authored a memorandum or "post order" directing Securitas employees to clear the stairs. In particular, Sprague stated that Securitas security guards assigned to the salt plant's guard house were responsible for removing snow and ice from the guard house's stairs, and that Sprague and other security guards would perform that task as needed. Sprague Dep. Tr.[12] at 9, 14-16. Sprague could not recall whether any Morton employees ever removed snow or ice from the guard house stairs. *Id.* at 16. Marshall

---

[11] In September 2010, Sprague was promoted by Securitas to assistant supervisor of Morton Salt security.
[12] References to "Sprague Dep. Tr." are to the page of the transcript of Sprague's deposition, filed as Securitas's Exh. Q.

stated that in December 2008, the Securitas security guards would use a shovel and

salt provided by Morton to keep the area around the guard house clear of snow and ice

"[a]s often as the weather would require."  Marshall Dep. Tr.[13] at 7, 15-17.  Marshall also

stated Morton employees sometimes cleared the area around the guard house using a

truck with a salter on the back, but the Morton employees never cleared the stairs.  *Id*.

at 17-18.

West admitted at his deposition, West Dep. Tr.[14] at 50 that he authored a post

order ("Post Order") [15] stating

> ATTENTION ALL SECURITY PERSONNEL:
> IT IS OUR RESPONSIBILITY (THEREFORE PART OF OUR JOB) TO KEEP
> THE AREA AROUND THE GUARD HOUSE CLEAR OF SNOW AND ICE.  THIS
> INCLUDES NOT ONLY PUTTING DOWN SALT, BUT ALSO SHOVELLING (*sic*)
> THE SNOW AWAY FROM AND OFF THE STEPS.  IT WOULD BE REALLY
> GOOD TO DO THIS ON THE OVERNIGHT SHIFT BEFORE MAINTENANCE
> STARTS PLOWING.  DURING THE DAY SHIFTS, IF IT IS SNOWING REALLY
> HARD, WHEN YOU GO OUT TO CHECK OUT A TRUCK, GRAB THE SHOVEL
> ON YOUR WAY OUT AND SHOVEL THE STEPS AND GENERAL AREA
> WHILE YOU ARE OUT THERE.  (NOT EVERY TIME, BUT OFTEN ENOUGH
> TO KEEP THE AREA CLEAR.)  IF ANYONE SLIPS AND FALLS AND HURTS
> THEMSELVES, THE GUARD ON DUTY COULD VERY WELL BE HELD
> RESPONSIBLE.  IT IS IN YOUR OWN BEST INTEREST TO KEEP THE AREA
> CLEAR.  IF I SEE THAT THIS IS NOT BEING DONE, YOU WILL BE WRITTEN
> UP.  IF IT STILL CONTINUES, YOU WILL BE FIRED.
> CAPTAIN WEST

Post Order.

West could not recall whether he drafted the Post Order before or after Manhart fell

from the guard house stairs on December 10, 2008, West Dep. Tr. at 51, and did not

know whether he was authorized to impose such obligation on Securitas employees.

---

[13] References to "Marshall Dep. Tr." are to the page of the transcript of Marshall's deposition, filed as
Securitas's Exh. R.
[14] References to "West Dep. Tr." are to the page of the transcript of West's deposition, filed as Securitas's
Exh. H.
[15] Morton Exh. K

*Id.* at 52.  West further stated that he never discussed with Morton employees who was responsible for clearing snow and ice from the guard house and its stairs, *id.*, that it was not West's understanding that Securitas personnel were responsible for clearing snow and ice from the guard house stairs, *id.* at 52-53, that Securitas employees were not always the ones to remove snow and ice from the guard house steps, but that Morton employees also performed such task.  *Id.* at 53.  According to West, Morton was responsible for snow and ice removal at the guard house, although Securitas often cleared snow and ice from the guard house area and stairs as a "courtesy" so that no one would slip and fall, *id.* at 53-54, and West also gave other Securitas employees a direct order that they were responsible for clearing snow and ice, although West never penalized any Securitas employee for failing to do so.  *Id.* at 55-56.  West also stated that salt and a shovel provided by Morton were available for Securitas employees to use in clearing snow and ice, but denied engaging in any snow or ice removal on the guard shack's stairs on December 8, 2010, *id.* at 57, or that there was any snow or ice on the ground or on the guard shack stairs.  *Id.* at 58.

The record thus contains sufficient evidence upon which a reasonable jury could find Securitas had assumed the duty of keeping the stairs clear of snow and ice, such that the failure to do so could result in liability to Securitas, and the court next addresses whether evidence in the record could support a reasonable jury's determination that Securitas had notice of the alleged dangerous condition caused by snow and ice on the guard house stairs.

### B.    Notice

In support of summary judgment, Securitas argues that aside from Manhart's own self-serving statements, there is no evidence in the record establishing that any snow or ice was present on the guard house stairs when Manhart fell on December 10, 2008, contrary to the two reports completed by West for Securitas, and Caldwell for Morton, both of which attributed the cause of Manhart's fall to Manhart's own misstep. Securitas's Memorandum at 4.  Nor, according to Securitas, is there any evidence of when the alleged icy conditions developed on the guard house stairs, such that any determination that Securitas failed to timely rectify a dangerous condition is mere speculation.  *Id*. at 4-8.  In opposition to summary judgment, Plaintiffs argue that both Manhart and Debra Manhart confirmed at their depositions that the weather on December 10, 2012 was rainy, cold, snowy and icy, Plaintiff's Response at 7-8, relying in support on certified meteorological records from the Dansville, New York Municipal Airport,[16] for the month of December 2010, to substantiate the claimed icy condition of the stairs, including that it had rained during the morning hours, but stopped raining by 2:00 P.M., and the temperature, which was below freezing at 11:00 A.M., had continued dropping to 29° at the time of the incident, *i.e.*, 4:29 P.M.  *Id*. at 8-9 and Plaintiff's Exhs. 5 and 8.  Morton also opposes Securitas's motion for summary judgment on Plaintiff's negligence claim, arguing the record establishes material issues of fact exist as to whether Securitas created or had notice of the icy condition of the stairs.  Morton's Response at 4-6.  In further support of summary judgment on the negligence claim,

---

[16] The court takes judicial notice that the Dansville Municipal Airport is approximately 20 miles from the salt plant.  *See Logan v. Matveevskii*, 57 F.Supp.3d 234, 265 n. 10 (S.D.N.Y. 2014) (taking "judicial notice under Rule 201 of the Federal Rules of Evidence" of distance between two locations "according to Google Maps").

Securitas argues that without expert testimony or affidavit stating the weather conditions observed in Dansville were indicative of, or the same as, those in Silver Springs, the meteorological data on which Plaintiffs rely is merely conclusory and speculative and, as such, insufficient to avoid summary judgment.  Securitas's Reply at 4-6.  Securitas also asserts that such evidence fails to support the conclusion that ice formed on the stairs and was present for a sufficient period of time such that Securitas should have discovered the ice prior to Manhart's fall.  *Id.* at 6-8.  Securitas further maintains that Morton has failed to present any evidence that Securitas created or had actual or constructive notice about any ice hazard on the stairs.  *Id.* at 8-10.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it."  *Gordon v. American Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986) (citing cases).  Nor is "a general awareness" that a "dangerous condition may be present . . . legally sufficient to charge defendant with constructive notice" of a hazard.  *Id.*  Furthermore, "[a] property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter."  *Solazzo v. New York City Transit Authority*, 843 N.E.2d 748, 749 (N.Y. 2005) ("A general awareness that the stairs and platforms become wet during inclement weather was insufficient to establish constructive notice of the specific condition causing plaintiff's injury.").

Here, despite Plaintiffs' deposition testimony describing the general weather conditions on the date in question, December 10, 2008, as rainy, cold, snowy, and icy, as well as the certified meteorological records showing rain at Dansville Municipal

Airport during the morning hours of December 10, 2008, had stopped by 2:00 P.M., and the temperature had dropped to 29° at the time of the incident, *i.e.*, 4:29 P.M., Plaintiff's Exhs. 5 and 8, Plaintiffs' evidence simply fails to establish the condition of the stairs at the guard shack when Manhart fell.   Nevertheless, the meteorological data is consistent with the deposition testimony of Plaintiffs, *i.e.*, that light precipitation was falling throughout the region on December 10, 2008, during which the temperature hovered near the freezing mark, circumstances in which icy conditions can easily form on untreated surfaces.

"The mere presence of ice does not establish negligence on the part of the entity responsible for maintaining the property."  *Lenti v. Initial Cleaning Services, Inc.*, 860 N.Y.S.2d 42, 43 (1st Dep't 2008).  Rather, evidence must be presented by Plaintiffs permitting an inference that the icy conditions that caused Manhart to slip were present on the stairs "for a long enough period of time before the accident that the party responsible for the [stairs] would have had time to discover and remedy the dangerous condition."  *Id.* (citing *Simmons v. Metropolitan Life Ins*. Co., 646 N.E.2d 798 (N.Y. 1994)).  Further, a defendant may be entitled to summary judgment "in a snow or ice case where a defendant demonstrates, through climatological data and expert opinions, that the weather conditions would preclude the existence of snow or ice at the time of the accident."  *Massey v. Newburgh W. Realty, Inc.*, 923 N.Y.S.2d 81 (1st Dep't 2011).

Similar to the instant case, a plaintiff's testimony that the conditions were icy, supported by meteorological data of the geographical area prior to the plaintiff's fall has been held to raise a triable issue of fact to avoid summary judgment.  *Walters v. Costco Wholesale Corp.*, 858 N.Y.S.2d 269 (2d Dep't 2008).  Specifically, in *Walters*, the court

held there was a genuine issue of material fact regarding whether the defendant premises owner had constructive knowledge of icy conditions in the parking lot for a sufficient length of time to have discovered and remedied a patch of black ice on which the plaintiff slipped and fell where the injured plaintiff submitted evidence showing there was precipitation and intermittently freezing temperatures on several days prior to the accident. *Id.* at 270. Here, the deposition testimony of Manhart and his wife that the weather on December 10, 2008, included persistent light precipitation and cold, icy temperatures, coupled with the certified meteorological reports from a nearby location establishing light precipitation had fallen throughout the day at temperatures hovering near 32° F, create a triable issue of fact as to whether the stairs to the guard shack were icy when Plaintiff maintains he slipped and fell, sufficient for Plaintiff to avoid summary judgment on this ground.

There is thus a triable issue of fact that would support a jury's determination that Securitas was on notice of the presence of snow and ice on the guard house stairs yet failed to timely act to remedy the hazardous situation. As such, insofar as Securitas seeks summary judgment on Plaintiff's negligence claim, Securitas's Motion should be DENIED.

## C. Contractual Indemnification

Although Morton alleges cross-claims for common law indemnification and contribution ("First Cross-Claim"), and contractual indemnification ("Second Cross-Claim"), Morton seeks summary judgment only on the Second Cross-Claim seeking contractual indemnification. Even if Securitas did, as a matter of fact, assume such duty, Securitas is not, as a matter of law, liable to Morton for contractual indemnification

because the Amendment to the Agreement, construed in accordance with Pennsylvania

law as required, Agreement ¶ 19.1, specifies that "[Securitas] has no obligation to

perform any duties or services (and will bear no responsibility for duties and services)

other than those expressly specified by the Agreement."  Amendment ¶ 8.

Under relevant Pennsylvania law,

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties.  The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself.  The whole instrument must be taken together in arriving at contractual intent.  Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed.  When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties.  A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.  This question, however, is not resolved in a vacuum.  Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.  In the absence of an ambiguity, the plain meaning of the agreement will be enforced.  This meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Murphy v. Duquesne University*, 777 A.2d 418, 429-30 (Pa. 2001) (internal quotation marks and citation omitted).

"[W]here language is clear and unambiguous, the focus of interpretation is upon the

terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently

intended."  *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) (italics in original).

Here, the parties do not argue that the Agreement or the Amendment is

ambiguous; rather, Morton maintains that snow and ice removal from the guard house

stairs was "a service within the contemplated scope of the [A]greement."  Morton

Response at 16-18.  If true, however, that the Agreement may have "contemplated" that

Securitas would perform snow and ice removal from the guard house, including the

guard house stairs, falls short of the Amendment's provision that "[Securitas] has no

obligation to perform any duties or services (and will bear no responsibility for duties

and services) *other than those expressly specified by the Agreement*."  Amendment ¶ 8

(italics added).  Even with a strict construction of ¶ 8 of the Amendment, as required

under Pennsylvania law, *Topp Copy Products, Inc. v. Singletary*, 626 A.2d 98, 99 (Pa.

1993), the unambiguous language of ¶ 8 leads only to the conclusion that Securitas is

to be held liable only for negligent acts pertaining to the provision of security services at

Morton's salt plant.  To find otherwise would be to fail to construe the unambiguous

Amendment in accordance with its plain meaning as required under Pennsylvania law,

*Murphy*, 777 A.2d at 429-30, even if such construction would be contrary to what the

parties "silently intended."  *Steuart*, 444 A.2d at 661.  This finding is also consistent with

the Agreement's indemnification provision requiring

> To the fullest extent permitted by law, [Securitas] shall indemnify, hold harmless, and defend [Morton] . . . from and against all claims, damages, losses, and expenses, . . . *arising out of or resulting from the performances of services hereunder*, provided that any such claim, damage, loss, or expense is caused in whole or in part by the negligence of Seller or anyone directly or indirectly employed by it . . . .

Agreement ¶ 10.2 (italics added).

Although it is arguable that Manhart's accident arose out of some negligence by

Securitas in failing to keep the guard shack stairs clear of snow and ice, the

Amendment's indemnification provision is more limited, stating

> [Securitas] will defend (and control any such defense) and indemnify [Morton] (and any other person or entity required to be defended or indemnified under the Agreement) against any claim, loss, damage or expense *in connection with the Agreement*, but only to the extent the claim, loss, damage or expense is caused

by the negligence, willful misconduct, or other fault (including, but not limited to, breach of contract) of [Securitas], its employees or agents.

Amendment ¶ 1 (italics added).

As stated, Discussion, *supra*, at 14, the Agreement is silent as to who is responsible for snow and ice removal, such that any construction of the Agreement as requiring snow removal would fail to enforce the plain meaning of the Agreement in violation of Pennsylvania law. *Murphy*, 777 A.2d at 429-30. As such, summary judgment should be GRANTED in favor of Securitas on Morton's contractual indemnification cross-claim.

### D.    Common Law Indemnification and Contribution

Morton's First Cross-Claim alleges that if Plaintiffs should recover judgment against Morton, then such liability is properly attributed to the culpable conduct and negligence of Securitas, entitling Morton to indemnity or contribution under New York common law. Third-Party Complaint ¶¶ 12-13.

#### 1.    Contribution[17]

In support of summary judgment on the contribution cross-claim, Securitas argues that it cannot be held liable for contribution unless Morton can show that Securitas owed Plaintiffs a duty of reasonable care beyond its contractual obligation. Securitas's Memorandum at 15-17. In opposition to summary judgment, Morton argues Securitas is not entitled to summary judgment on the contribution cross-claim because the Agreement, including the Amendment and subsequent Purchase Orders provided that Securitas was responsible for snow and ice removal from the guard house stairs,

---

[17] Although Morton denominates its  First Cross-Claim as seeking common law contribution, the court notes that in New York, a contribution claim is not pursuant to common law but, rather, pursuant to N.Y. CPLR § 1401, enacted in 1974 to codify *Dole v. Dow Chemical Co.*, 282 N.E.2d 288 (N.Y. 1972) (permitting a sued tortfeasor to interpose a contribution claim against any other tortfeasor alleged to have participated in the tort, joining the other party if necessary). *See Children's Corner Learning Center v. A. Miranda Contracting Corp.*, 879 N.Y.S.2d 418, 421 (1st Dep't 2009) ("CPLR 1401 codified the concept of common-law contribution recognized by the Court [of Appeals] in *Dole v. Dow Chemical Co. . . .*").

such that Securitas had a contractual duty and, alternatively, Securitas had assumed

the duty of snow and ice removal.  *Id*. at 21-23.  In further support of summary judgment

on contribution, Securitas asserts that the Agreement did not require Securitas to clear

snow and ice from the guard house stairs, and denies assuming any such duty outside

the scope of the Agreement.  Securitas's Reply at 12-22.

Under New York law, Morton's cross-claim for contribution is without merit in the

absence of some showing that Securitas "owed [Morton] a duty of reasonable care

independent of its contractual obligations or that a duty was owed to the injured plaintiff

and that a breach of that duty contributed to his alleged injuries."  *Cochrane v. Warwick*

*Associates, Inc.*, 723 N.Y.S.2d 506, 508 (2d Dep't 2001).  In the instant case, as

discussed, Discussion, *supra*, at 16-18, there is evidence in the record on which a trier

of fact could find that Securitas had assumed a duty of routinely clearing snow and ice

from the guard house stairs and that a failure to do so on the day in question

contributed to Manhart's fall and subsequent injuries.  Accordingly, summary judgment

on Morton's contribution cross-claim should be DENIED as to Securitas.

## 2.   Common Law Indemnification

In support of summary judgment on Morton's common law indemnification cross-

claim, Securitas argues that a common law indemnification cross-claim requires that

Plaintiffs' injuries be solely attributable to the negligent performance of a duty solely

within the province of Securitas which the record fails to establish.  Securitas's

Memorandum at 18-20.  In opposition to summary judgment, Morton argues Securitas is

not entitled to summary judgment on the common law indemnification cross-claim

because Securitas has not demonstrated that its employees did not create or

exacerbate the alleged hazardous condition, *i.e.*, the snow and ice on the guard house stairs.  Morton's Response at 23-25.  In further support of summary judgment on the common law indemnification claim, Securitas maintains that the Agreement, including the Amendment and Purchase Order, did not displace Morton's duty, as owner of the salt plant premises, so as to impose an independent and exclusive duty on Securitas toward Plaintiff.  Securitas's Reply at 19-22.

"The principle of common-law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party."  *Currei v. Heritage Property Investment Trust, Inc.*, 852 N.Y.S.2d 278, 281 (2d Dep't 2008) (citing *D'Ambrosio v. City of New York*, 435 N.E.2d 366, 368 (N.Y. 1982)).  "If . . . an injury can be attributed solely to the negligent performance or nonperformance of an act solely within the province of [a] contractor, then the contractor may be held liable for indemnification to an owner."  *Currei*, 852 N.Y.S.2d at 281 (citing cases).  "A party that has actually participated in the wrongdoing is not entitled to indemnification."  *Rappel v. Wincoma Homeowner's Association*, 4 N.Y.S. 3d 276, 278 (2d Dep't 2015) (citing *17 Vista Fee Association v. Teachers Insurance & Annuity Association of America*, 693 N.Y.S.2d 554, 558 (1st Dep't 1999)).  Further, where the owner of the premises retains the right to enter and make repairs to the premises, the owner cannot recover on an indemnification claim but is liable for any injuries arising from a structural or design defect in the property.  *Fischbein v. 1498 Third Realty Corp.*, 639 N.Y.S.2d 591, 592 (4th Dep't 1996).

In the instant action, insofar as Plaintiffs attribute their injuries to Manhart's slipping and falling on snow and ice-covered stairs to the guard house, the record

establishes the existence of fact issues regarding whether the task of clearing the guard house stairs of snow and ice was solely within the province of Securitas or was shared by Securitas and Morton.  *See* Discussion, *supra*, at 16-18 (discussing deposition testimony of Securitas individuals who stated Securitas routinely cleared the guard house stairs of snow and ice using supplies provided by Morton).  As such, a reasonable jury could find Securitas was solely responsible for Manhart's fall and thus is liable to Morton for Plaintiffs' injuries on a theory of common law indemnification. *Currei*, 852 N.Y.S.2d at 281.

Securitas's motion therefore should be DENIED insofar as Securitas seeks summary judgment on Morton's common law indemnification claim.


**4.      Breach of Contract Claim**

Morton asserts against Securitas a cross-claim for breach of contract for failure to procure liability insurance coverage for Morton, Third-Party Complaint ¶¶ 21-24, on which Securitas seeks summary judgment on the basis that the Agreement fails to require Securitas procure insurance naming Morton as an additional insured. Securitas's Memorandum at 17-19.  In opposition to summary judgment on this cross-claim, Morton maintains Securitas erroneously relies on only the Agreement, ignoring that the Purchase Order specifies that Securitas was to procure insurance naming Morton as an additional insured.  Morton's Response at 18-20.  In further support of summary judgment, Securitas argues the Purchase Order's provision on which Morton relies does not merely supplement the Agreement but, rather, adds a "starkly different . .

. obligation" such that it is an "obvious contradiction" which, by the terms of the Agreement, does not apply.  Securitas's Reply at 17-19.

That Securitas failed to procure insurance naming Morton as an additional insured is not disputed.  Although the Agreement does require Securitas to obtain, *inter alia*, "Comprehensive General Liability Insurance," Agreement ¶ 10.1, nowhere in the Agreement is Securitas required to name Morton as an additional insured.  The Amendment's insurance coverage clause, despite mentioning that any insurance coverage, additional insured or otherwise, Securitas provides for Morton will only cover services assumed by Securitas in the Amendment, Amendment ¶ 5, the Amendment also fails to require Securitas to have Morton named as an additional insured in any such insurance.  Nevertheless, the Purchase Order plainly states that

> All required insurance shall be endorsed to include Morton International, Inc., its divisions and/or subsidiaries as an additional insured; shall provide that Morton International, Inc., its divisions and/or subsidiaries shall not be stopped from recovery against Provider under the policy due to being covered as an Additional Insured. . . . .

Purchase Order ¶ 5(c).

Although the Agreement also provides that the terms of the Agreement govern "[i]n the event of a conflict between the preprinted terms on a Purchase Order and the terms elsewhere in this Agreement . . . ," Agreement ¶ 4.1, a plain reading of the Purchase Order's preprinted provision requiring insurance procured by Securitas under the Agreement name Morton as an additional insured is not, as Securitas argues, Securitas's Reply at 17-19, inconsistent with the Agreement because is merely adds an additional insurance requirement rather than contradicting the Agreement's existing requirement that Securitas obtain and maintain comprehensive general liability

insurance.  *See* Inconsistent, <u>Black's Law Dictionary</u> (10th ed. 2014) (defining

"inconsistent" as "lacking agreement among parts; not compatible with another fact or

claim"); see also Inconsistent, <u>Webster's Third New International Dictionary -

Unabridged</u> (1986) (defining "inconsistent" as "incompatible, incongruous,

inharmonious" such that "propositions, ideas, [or] beliefs" are "so related that both or all

cannot be true or containing parts so related").

Accordingly, summary judgment on Morton's Third Cross-Claim alleging breach

of contract based on Securitas's failure to procure insurance naming Morton as an

additional insured should be GRANTED in favor of Morton.


## <u>CONCLUSION</u>

Based on the foregoing, Third-Party Defendant Securitas's Motion (Doc. No. 51),

should be GRANTED in part and DENIED in part; Defendant Morton's Motion (Doc. No.

57), should be GRANTED in part and DENIED in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 11, 2015
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs, the Defendants and Third-Party Plaintiffs, and the Third-Party Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  August 11, 2015
Buffalo, New York